**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 12-cv-2610-WJM

MARY L. LUYK,

    Plaintiff,
v.

CAROLYN W. COLVIN, Commissioner of Social Security Administration

    Defendant.

---

**ORDER REVERSING ADMINISTRATIVE LAW JUDGE'S DECISION
AND REMANDING TO THE COMMISSIONER**

---

    This is a social security benefits appeal brought under 42 U.S.C. § 405(g). Plaintiff Mary L. Luyk ("Plaintiff") challenges the final decision of Defendant, the Commissioner of Social Security ("Commissioner"), denying her application for disability and social security benefits. The denial was affirmed by an Administrative Law Judge ("ALJ"), who ruled Plaintiff was not disabled within the meaning of the Social Security Act ("Act"). This appeal followed.

    For the reasons set forth below, the ALJ's denial of benefits is reversed and the case is remanded to the Commissioner for rehearing.

## I.  BACKGROUND

    Plaintiff filed a claim for Disability Insurance Benefits alleging disability beginning March 22, 2007 (Admin. Record ("R.") at 209-221). Plaintiff's claim was initially denied on August 28, 2008, and Plaintiff requested a hearing on October 13, 2008 (R. 89, 93, 97.) ALJ James A. Wendland held the hearing on October 25, 2010. (R. 27.) By

hearing decision dated December 3, 2010, the ALJ denied Plaintiff's request. (R. 10.) Plaintiff filed a request for Appeals Council review of the ALJ's decision on March 3, 2011. (R. 204, 206.) On May 18, 2012, the Appeals Council denied Plaintiff's request and thereby adopted the ALJ's decision as the final decision of the Commissioner. (R. 5.) Plaintiff has sought judicial review on her claim for benefits, timely filing this appeal with the District Court.

**A.     Plaintiff's Applications and Disabilities**

In her application for diability benefits, Plaintiff alleged disability due to hernia and depression. (R. 255.) Regarding her physical condition, Plaintiff testified that she was injured at work on November 16, 2006. (R. 32.) She experienced pain while lifting and was subsequently diagnosed with a hernia. (*Id.*) Plaintiff underwent hernia repair on March 22, 2007. (*Id.*) Plaintiff stated that she suffered another hernia and underwent a second operation in September 2009, which had limited benefit. (R. 34, 46-47.) Plaintiff testified that she experiences pain when walking and that she tires easily. She sometimes uses a cane. (R. 45, 47.) Plaintiff noted during the ALJ hearing that she is barely able to lift 10 or 15 pounds using both hands. (R. 47.)

Regarding her mental condition, Plaintiff testified that she had trouble concentrating at work and that her depression and anxiety would limit her ability to function in a work environment.[1] (R. 46.) Regarding her alcohol use, Plaintiff admitted that she suffers from alcohol withdrawal seizures. (R. 39-40.)

---

[1] The Court notes that the focus in this Order is with respect to Plaintiff's mental impairments, not her physical impairments. The latter is noted here for context.

**B.     Relevant Medical Evidence**

On August 22, 2008, Frederick Leidal, Psy.D. performed a consultative psychological evaluation of Plaintiff.  (R. 388)  Plaintiff reported her depression and anxiety at an 8 out of 10 rating.  (R. 390.)  Dr. Leidal diagnosed her with 'adjustment disorder', with anxiety and depressed mood.  (R. 392.)  He then assigned Plaintiff a score based on her functioning as not greater than 70, indicating that while she has some difficulty, she had no major functional problems.  (R. 391-92). He also assigned her a GAF[2] score based on her symptoms of not greater than 60, "suggesting moderate problems." (R. 392.)  Finally, Dr. Leidal opined that Plaintiff was not impaired or only mildly impaired in almost every category.  (R. 392-93), including the fact that she was not impaired in her ability to "understand and carry out more detailed instructions," but was "mildly to moderately limited in her ability to understand and comprehend and carry out more complex levels of instruction." (R. 392.)

On May 1, 2009, Plaintiff presented at the Stout Street Clinic with chest pain and pain down her right leg.  She reported that she takes Ativan for anxiety, but was tearful and reported feelings of being overwhelmed by her hernia pain, anxiety, homelessness, and joblessness.  (R. 413.)  On July 20, 2009, Plaintiff again presented at the Stout Street Clinic for a psychiatric intake examination, which was conducted by Cameron

---

[2] A GAF score provides an assessment of psychological, social, and occupational functioning "for the current period." See American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32-33 (4th ed. text revision 2000) (DSM-IV-TR) ("[T]he GAF scale has two components: the first part covers symptoms severity, and the second part covers functioning. The GAF rating is within a particular decile if either the symptom severity or the level of functioning falls within the range. . . . It should be noted that in situations where the individual's symptom severity and level of functioning are discordant, the final GAF rating always reflects the worse of the two.")

Garrett, RN. (R. 419.) Plaintiff reported that she takes Ativan for anxiety, Trazadone to help her sleep, and Celexa for depression, noting that even with Celexa, she still feels hopeless. (R. 419.) She reported that she has had panic attacks for the last 4 to 5 years including one recent attack. (R. 420.) She also reported that she has struggled with alcohol abuse on and off since her twenties. (R. 419) Plaintiff reported that she needs help with her panic attacks. (R. 421) Ms. Garrett diagnosed Plaintiff with major depression, post-traumatic stress disorder, alcohol dependence, and assigned a GAF score of 40. (R. 421) Ms. Garret prescribed Citalopram for depression, Temazepam for sleep, and hydroxyline for anxiety. (R. 423)

On August 24, 2009, Plaintiff had a further appointment at the Stout Street Clinic for a medication update and she was prescribed Temazepam, hydroxyzine, and Citalopram. (R. 418)

On May 19, 2010, Plaintiff presented again to Nurse Garrett at the Stout Street Clinic complaining of seizure and withdrawals. (R. 629.) Ms. Garrett noted that Plaintiff was angry and irritable with negative thinking and poor judgment. Ms. Garrett noted that Plaintiff's Axis I diagnoses as anxiety disorder, major depressive disorder, and alcohol dependence. (*Id.*) On Axis III, Nurse Garrett noted chronic pain and prescribed hydroxyzine, Temazepam, Citalopram, and Abilify to Plaintiff. (R. 629)

**C.     The ALJ Decision**

On December 3, 2010, the ALJ determined that Plaintiff was not disabled under the Act. (R. 13-22).[3] At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her March 22, 2007 alleged onset date. (Tr. 17). The ALJ found Plaintiff's impairments to be severe, including: "status-post two hernia repair surgeries, depression, anxiety and alcohol abuse with withdrawal seizures." (R. 17.) The ALJ, however, found that Plaintiff did not meet or equal a *per se* disabling impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1. (R. 17). Between steps three and four, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and found that Plaintiff could physically perform a reduced range of sedentary work, but that mentally she could not be required to understand, remember, or carry out more than detailed instructions. (R. 18.) Based on vocational expert testimony, the ALJ found that Plaintiff had transferrable skills and, given those transferrable skills (and Plaintiff's RFC), could perform other work in the national economy including receptionist and work as a credit clerk. (R. 21-22). The ALJ concluded that Plaintiff was not disabled under the Act (R. 22). This appeal followed.

---

[3] The five-step process requires the ALJ consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. § 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988.) The claimant has the burden of proof through steps one to four; the Social Security Administration has the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

## II.  STANDARD OF REVIEW

The Court reviews decisions of the Commissioner to determine (1) whether substantial evidence in the record as a whole supports the factual findings, and (2) whether the correct legal standards were applied.  *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).  Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion.  *Id.*  "It requires more than a scintilla, but less than a preponderance."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

Although a district court will "not reweigh the evidence or retry the case," a district court "meticulously examines the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007); *see also* 42 U.S.C. § 405(g).

As the Tenth Circuit observed in *Baca v. Dep't of Health & Human Servs.*, 5 F.3d 476, 480 (10th Cir. 1993), the ALJ also has a basic duty of inquiry to "fully and fairly develop the record as to material issues."  *Id.*  This duty exists even when the claimant is represented by counsel.  *Id.* at 480.

## III.  ANALYSIS

The Appeals Council denied Plaintiff's request for review of the ALJ's decision.  Plaintiff then filed this action seeking review of that decision.  On appeal, Plaintiff raises several issues for consideration—the primary issue being whether the ALJ erred in

failing to consider the medical evidence in the record of Cameron Garrett, RN.[4]

Since the Court finds that the ALJ erred in not applying the correct legal standards with respect to Ms. Garrett's evidence because the ALJ did not properly apply the correct standards pursuant to SSR 06-3p, the Court finds that such error requires remand of the ALJ decision. And because this deficiency prevents the record from being fully and fairly developed, which in turn compromised the RFC, the Court also finds that this related ground also warrants reversal and remand for further consideration. *See Miller v. Chater*, 99 F.3d 972, 978 (10th Cir. 1996) (recognizing that remand is appropriate where further fact finding is needed).

## A. The ALJ Did Not Properly Evaluate and Apply the Relevant Factors to the Evidence Proffered by Cameron Garrett RN.

Plaintiff contends that the ALJ committed reversible error by improperly rejecting the opinion of Nurse Garrett in denying Plaintiff's claim for disability benefits—*i.e.*, the ALJ was "too quick to discount" Ms. Garrett's opinion and "gave inadequate discussion" in the decision. (ECF No. 17 at 11.) Plaintiff points to SSR 06-3p, contending that the ALJ failed to address the following factors when it weighed Nurse Garrett's opinion for the purpose of determining Plaintiff's mental limitations—including: "(1) How long the source has known and how frequently the source has seen the individual; (2) How consistent the opinion is with other evidence; (3) The degree to which the source presents relevant evidence to support an opinion; (4) How well the source explains the opinion; (5) Whether the source has a specialty or area of expertise related to the

---

[4] As noted later, the Court expresses no opinion as to the other issues identified by Plaintiff in briefing, but encourages the parties as well as the ALJ, to consider the evidence and issues anew on remand.

individual's impairment(s); and (6) Any other factors that tend to support or refute the opinion." *See,* SSR 06-03p, 71 Fed. Reg. 45,593, 45,595 (Aug. 9, 2006). *See also, Wall*, 561 F.3d at, 1052 (10th Cir. 2009) (stating that failure to apply correct legal standards constitutes reversible error).   Tellingly, and relevant to this case, the above factors are set in the following context as expressly stated in SSR 06-03p:

> With the growth of managed health care in recent years and the emphasis on **containing medical costs**, medical sources who are not "acceptable medical sources," such as **nurse practitioners**, physician assistants, and licensed clinical social workers, have **increasingly assumed** a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are **important** and should be evaluated on **key issues such as impairment severity** and **functional effects**, along with the other relevant evidence in the file. (*emphasis added.*)

Here, the Court finds that the ALJ erred in not properly applying several factors identified in SSR 06-3p.  Indeed, there is no discussion of at least three of the factors; and very limited discussion of the remaining three based on the solitary paragraph in the ALJ decision regarding Nurse Garrett's evidence.[5]

---

[5] The ALJ's analysis of Nurse Garrett's evidence is limited to the following paragraph, at R.20.  It provides:

> The undersigned acknowledges some other evidence that appears to suggest a greater level of mental impairment. Records from Stout Street Clinic on at least two occasions indicate a GAF of only 40 (Exhibits 8F, pp. 14 and 22). There are no substantiating objective/mental status findings in these reports, however, and there is again suggestion that current events (*i.e.*, worry regarding a breast mass) are the primary cause of the claimant's mental complaints rather than a chronic depressive or anxiety-related condition. For these reasons, the Administrative Law Judge does not consider this evidence

As to the first factor, the Court finds the ALJ's analysis is utterly deficient. Despite the Plaintiff meeting Nurse Garrett on at least three occasions (which can be found in the record), the ALJ simply ignores these facts. (R. 403-426.)  It is evidence that goes directly to consideration of the first factor—that is: (1) how long Plaintiff had *known* Ms. Garrett, or (2) how frequently she was seen same.   As such, the first factor has not been properly applied, nor explained in the decision. This constitutes legal error, which warrants reversal and remand.  *See Wall*, 561 F.3d at 1052 (holding that a district court reviews decisions of the Commissioner to determine whether the correct legal standards were applied.)

The Court also finds that the ALJ's analysis of third factor is deficient. Specifically, there is little explanation by the ALJ of the degree to which Nurse Garrett presents evidence to support findings that Plaintiff suffered from depression.  Despite providing a detailed psychiatric intake examination of Plaintiff's mental impairments (over six pages in length), there is only cursory reference to this examination by the ALJ in the decision. (R. 20.) This is not adequate analysis of this factor, nor does this demonstrate that the ALJ has fully and fairly developed the record so that this Court can adequately review the decision.  *See Baca*, 5 F.3d at 480 (stating that the ALJ also has a basic duty of inquiry to "fully and fairly develop the record as to material issues.")

---

persuasive in establishing any greater restrictions on work-related mental functioning than indicated in the residual functional capacity above.

Finally, the Court finds that ALJ did not meaningfully address the fifth factor[6]—*i.e.*, whether Ms. Garrett has an area expertise related to Plaintiff's impairment(s). *See* SSR 06-03p. Given the increasing role assumed by registered nurses in evaluating functions previously handled by physicians, the Court finds that application of this factor takes on increased significance. This view is consistent with what is stated in SSR 06-03p. It follows that failure to properly apply the fifth factor, as here, further supports a finding that a decision-maker has erred in application of same.

Relevantly, Ms. Garrett is the registered nurse who conducted a psychiatric intake evaluation of Plaintiff. (R. 420.) This is undisputed. The Commissioner acknowledges this fact in her Response. (ECF no. 18. at 6.) But this begs the question: if the Commissioner acknowledges that Nurse Garrett conducted a psychiatric examination, and had sufficient expertise to prescribe medications, why wasn't this similarly addressed in the ALJ's decision? (R. 419-425). This evidence goes directly to the fifth factor under SSR 06-3p—*i.e.*, the area of expertise of Ms. Garrett. And the fact that it has not been addressed in the ALJ decision yet again constitutes legal error in application of SSR 06-3p, warranting the need for reversal and remand. *See Wall*, 561 F.3d at 1052.

---

[6] It is puzzling that the ALJ did not even reference Nurse Garrett by name in the ALJ decision, let alone her expertise in psychiatric care and treatment of Plaintiff. Indeed, there is no reference to Ms. Garrett in the entire decision. This not only demonstrates that SSR 06-3p has not been adequately applied to the facts; but it demonstrates that the ALJ's decision is not congruent with the purpose underlying SSR 06-3p (stating that nurse practitioners have increasingly assumed a greater percentage of the treatment in the community and "[o]pinions from these medical sources . . . are important and should be evaluated on key issues such as impairment severity and functional effects.") Without reference to the registered nurse's name in the decision, it can hardly be said that the ALJ has treated Ms. Garrett's opinion with the level of importance it deserves pursuant to SSR 06-3p.

In sum, the ALJ did not apply the correct legal standard because the ALJ did not address (1) how long Plaintiff had *known* Ms. Garrett (or the *frequency* of her the appointments); (2) the *degree* to which Ms. Garrett presented relevant evidence to support the diagnosis that Plaintiff was depressed, and (3) Ms. Garrett's *area of specialization*, as required under SSR 06-03p.[7] (*emphasis added.*) Because the ALJ has not applied the correct legal standard—at least with respect to the abovementioned factors—the Court finds that the ALJ has erred in its determination. As such, the Court has little choice but to remand Plaintiff's case for further consideration. *See Wall*, 561 F.3d at, 1052 (stating that failure to apply correct legal standards constitutes reversible error).[8]

B. **The ALJ Failed to Formulate the RFC by Not Including all of Plaintiff's Limitations**

Plaintiff also challenges the ALJ's decision on the grounds that the RFC has not been properly formulated because it was not based on substantial evidence. (ECF No. 17 at 1, 11-12.) The Court agrees. Much of the reasoning derives from that above. But to make clear, the RFC assessment is made by the ALJ "based on all the relevant evidence in [the claimant's] case record." 20 C.F.R. § 404.1545(a)(1). The RFC is an assessment of the most a claimant can do despite his or her limitations. *Id.* Soc. Sec.

---

[7] The Court make no express findings with respect to the other factors. While on the one hand there is possibly enough in the solitary paragraph discussion of Nurse Garrett's evidence to establish that SSR 06-03p has been properly applied with respect to the remaining factors; the analysis is still threadbare. The ALJ would be encouraged to review these factor anew on remand and provide more detailed findings and application of law to fact.

[8] To the extent that it is argued by the Commissioner, the Court notes that the doctrine of harmless error does not apply in this case. The doctrine only applies in the most exceptional of cases—not this one. *See Allen*, 357 F.3d at 1145.

Ruling (SSR) 96–8p (July 2, 1996). An ALJ must make specific RFC findings based on all of the relevant evidence in the record. See Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996); SSR 96–8p, 1996 WL 374184, at *5 (July 2, 1996) (stating that "the adjudicator must explain how any material inconsistencies or ambiguities in the evidence in the case record were resolved.").

Here, the RFC analysis has been compromised because the record has not been fully and fairly developed. As found above, evidence from the Nurse Garrett has been too readily rejected. The ALJ has not properly evaluated that evidence in accordance with SSR 06-03p. Had there been proper evaluation, relevant evidence in the record may not have been rejected. As noted in Nurse Garrett's psychiatric evaluation, there is evidence in that report which is at odds with evidence of other medical sources, such as Dr. Leidal. The ALJ relied on Dr. Leidal opinion; the ALJ improperly rejected Nurse Garrett's evidence. In conclusory fashion, it was not considered "persuasive." (R. 20.) The Court finds that because evidence supporting disability has been improperly evaluated (which constitutes a legal error), the record has not been fully and fairly developed. As result, the Court has no confidence in the findings that provide foundation for the ALJ's RFC analysis. This alone is enough to warrant remand because the RFC cannot be said to be based on substantial evidence.[9] The Court finds as much. *See Flaherty*, 515 F.3d at 1070 (holding that the district court "meticulously examines the record as a whole, including anything that may undercut or detract from

---

[9] The Court notes that if the ALJ properly evaluates SSR 06-03p on remand, and still rejects the evidence, that will be a question of weight. That is solely for the province of the ALJ, and a finding that this Court cannot disturb.

the ALJ's findings in order to determine if the substantiality test has been met.")

## C.     The ALJ's Hypothetical Questions to the Vocational Expert Did Not Precisely Reflect Plaintiff's Limitations

Because of the above error in the RFC, Plaintiff further argues that ALJ erred since he did not "account for all of [Plaintiff]'s mental impairments. (ECF No. 17 at 12.) Specifically, because the questions to the vocational expert were predicated on a deficient RFC—that had been compromised by improper evaluation of the factors in SSR 06-03p—the Court finds that the testimony elicited from the vocational expert cannot be said to relate with precision to Plaintiff's mental limitations. As such, it cannot constitute substantial evidence upon which to deny Plaintiff's disability claim. The Court agrees. The case-law says as much.[10]  *See Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991) ("Testimony elicited by hypothetical questions that do not relate with precision to all of a claimant's impairments cannot constitute substantial evidence to support the [Commissioner's] decision.")

Accordingly, the Court finds that the ALJ's determination is not supported by substantial evidence, which warrants reversal and remand of this case. *Flaherty*, 515 F.3d at 1070.

## D.     Remaining Arguments

Plaintiff raises additional issues related to the sufficiency of the underlying proceedings. Because the Court finds that deficiencies in the ALJ decision exist as set forth in detail above, it need not address the other arguments raised by Plaintiff. *See*

---

[10] The Court notes that if the ALJ properly evaluates SSR 06-03p on remand, and the RFC can be said to be based on substantial evidence, the error with respect to the vocational expert will also fall away. By that determination is for another day.

*Madrid v. Barnhart*, 447 F.3d 788, 792 (10th Cir. 2006) (when the ALJ's error affected the analysis as a whole, court declined to address other issues raised on appeal).

The Court expresses no opinion as to Plaintiff's other arguments and neither party should take the Court's silence as tacit approval or disapproval of how the evidence was considered.  It is entirely possible that, given the passage of time, the ALJ could arrive at the same conclusion and find that Plaintiff is not disabled.  The Court does not intend by this opinion to suggest the result that should be reached on remand; rather, the Court encourages the parties, as well as the ALJ, to consider the evidence and the issues anew.

## IV.  CONCLUSION

For the reasons set forth above, the Commissioner's decision is REVERSED and this case is REMANDED to the Commissioner for rehearing.

Dated this 16st day of October, 2013.

BY THE COURT:

_____
William J. Martínez
United States District Judge